## PRAY v. GREAT FALLS MANUFACTURING COMPANY.

As a general rule, the express mention of one thing in a grant implies the exclusion of another.

Where a grantor by his deed conveyed the right to flow his land *below* a specified point, but no mention was made of the land *above*, and the grantees at the same time gave him a written agreement, stating that they had purchased the right to flow *below*, for which they were to pay him reasonable compensation—*Held*, that the right to flow *above* the specified point was not granted.

A grantor conveyed a piece of land by metes and bounds, and then added, "containing two acres, more or less, and embraces all the mill privilege on the Rochester side of said falls."—*Held*, that this was not a covenant that there was a mill privilege within the boundaries of the land, and that the term "embraces," as used in the deed, was not a term of grant.

CASE, for flowing a tract of land in Rochester. After the plaintiff had put in his title, the defendants introduced a deed from Levi L. Chick, under whom the plaintiff claimed, dated before the date of his deed to the plaintiff, conveying to the defendants the right, as they contended, to flow the land described in the plaintiff's writ. The court, at the trial, being of opinion that the deed might be a bar to the suit, suggested a verdict for the defendants, and reserved the question for the consideration of the whole court. The other facts necessary for an understanding of the decision, appear in the opinion of the court.

*Kimball, G. N. Eastman*, and *Hale*, for the plaintiff.

1. The word "embraces," used in the deed, is a word of description and limitation, intended to show that all the mill privilege granted by that part of the deed was the water power embraced in the two acres at Allen's Falls.

2. Conveyancers are presumed to know the intentions of the parties, and to use apt words to express them. The word "embraces," as used in the deed, is highly appropriate as a word of description and limitation, but most

inapt and really nonsensical as a word of grant in its collocation in this deed. Omitted, the grant of "all the mill privilege," &c., would have been perfect without any word in its stead.

3. The obligation of the defendants to Chick to compensate him for the right to flow his land below the two acres at Allen's Falls, made at the same time, shows that there was no mill privilege conveyed except what was embraced by the two acres at Allen's Falls.

4. But even if all the "mill privilege at Allen's Falls on the Rochester side" were granted, the deed could of itself be no bar to this action; it must then be shown by evidence *aliunde*, that the easement claimed in the plaintiff's land above the two acres, was, at the time of the grant, appurtenant to that mill privilege. 5 Wend. 523; 2 Hill 620; 2 Hilliard on Real Estate 341; Angell on Water Courses, 4th Ed., secs. 155, 166–358.

5. The consideration paid is to be regarded, and this shows that the construction contended for by the defendants is most unreasonable.

6. The grant in Chick's deed of "the right of flowing his land below said Tebbets dam, so far as the same may be flowed by means of said company's dam at Mast Point, at the present height of said dam, but no higher," gave the defendants no right to flow Chick's land above the two acres. The extent of this easement in Chick's land below the Tebbets dam is perfectly defined and fixed, so that there can be no question as to the intention of the parties. Chick limited what he granted, and the defendants limited the compensation they would make.

*Wells & Burleigh*, and *Christie & Kingman*, for the defendants.

1. This deed, as we contend, conveyed to the defendants three distinct things: first, two acres of land, more or less, in Rochester; second, a mill privilege on the Roch-

ester side of the Tebbets, or Allen's Falls; third, the right of flowing all Chick's land below the old dam at Allen's Falls, so far as the same may be flowed by means of the defendants' dam at Mast Point, at the present height of said dam. The word "embraces," as used in this conveyance, is a word of grant, and not of mere description or recital. It bears the same relation to "mill privilege" as it does to "the right of flowing," and means the same thing in both cases. Such a construction of this deed as we contend for is in accordance with the rules for construing such instruments. One rule is, that the best and surest mode of expounding an instrument is by referring to the time when and the circumstances under which it is made. Broom's Legal Maxims, 3d Ed., 434. Another legal maxim or rule of law in the construction of deeds is, the words are not the principal things in a deed, but the interest and design of the parties. 2 Hilliard on Real Estate 323, sec. 1. Another rule is, the law will arrange the clauses of a deed in such a way as to effect the object of the parties. 2 Hilliard on Real Estate 324, sec. 9, and cases there cited. And still another is, a deed poll is always construed most strongly against the grantor. 2 Hilliard on Real Estate 324, sec. 12, and cases there cited; Chitty on Contracts, 6 Am. Ed., 95, and authorities there cited.

2. By granting all the mill privilege on the Rochester side of Allen's Falls, Chick granted the defendants, so far as his land is concerned, the right at a suitable point to erect and maintain a dam suitable for a mill, and to flow all his land above Allen's Falls, so far as it could be flowed by means of the dam. These words in a grant are held to include water power, together with a right to maintain a dam *wherever* such dam would be suitable for the convenient and beneficial appropriation of the water power. Angell on Water Courses, 5th Ed., sec. 153 (a); *Stackpole* v. *Curtis*, 32 Me. 383. The grant of a mill or water privi-

lege passes, as appendant thereto, the right of flowing adjoining lands of the grantor, so far as is necessary for profitably using such privilege. 2 Hilliard on Real Estate 341, sec. 70; *Oakley* v. *Stanley,* 5 Wend. 523; *Calvin* v. *Bennett,* 2 Hilliard on Real Estate 620.

3. The defendants have the right to flow the plaintiff's land, both above and below Allen's Falls, so far as his land can be flowed by their dam at Mast Point, at its present height, by virtue of the last clause of the deed from Chick, dated December 12, 1839. That deed clearly gives the right of flowing below the falls; and if by flowing the land below the falls it flows that above, this is but the consequence or effect of the defendants doing what they have a right by Chick's deed to do, and what they must do to enjoy their grant. A grant passes everything necessary to its enjoyment. *Cochecho Manufacturing Company* v. *Whittier,* 10 N. H. 305; Angell on Water Courses, 5th Ed., sec. 165; *Whitney* v. *Olney,* 3 Mason C. C. 272. The maxim of the law is, that whoever grants a thing is supposed, also, tacitly to grant that without which the grant would be of no effect; and, therefore, when anything is granted, all the means to obtain it and all the fruits and effects of it are granted also. Angell on Water Courses, 5th Ed., sec. 158; *Evans* v. *Reed,* 12 Adolphus & Ellis 57; 1 Shepherd's Touchstone 89. It is a legal presumption that every grant carries with it whatever is essential to the use and enjoyment of the grant. 2 Parsons on Contracts, 2d Ed., 46; *Pomfret* v. *Ryecroft,* 1 Wms. Saund. 323, note (6); *Lyford's Case,* 11 Coke 52; 1 Co. Litt. 56, a.

EASTMAN, J. In the present aspect of this cause, all that the court are called upon to do is to give a construction to the deed of Chick to the defendants, dated December 12, 1839.

The description of the land conveyed by the deed is as

follows : " A certain tract or parcel of land, situate in Rochester, in the county of Strafford and State of New-Hampshire ; bounded, beginning at a white pine tree spotted, standing about ten rods below the remains of a dam on said falls built by Ira Tebbets, and on the bank of the river ; thence running north-easterly to a red oak tree, the top of which leans towards the river, and is spotted on two sides ; thence nearly on the same course to a white maple tree spotted ; thence on the same course to the river, a stake and stones being set on the bank in the line, which line is about fifteen rods above said dam ; thence southerly by the river to the beginning, containing two acres, more or less, and embraces all the mill privilege on the Rochester side of said falls, and the right of flowing my land below said dam, so far as the same may be flowed by means of said company's dam at Mast Point, at the present height of said dam, but no higher."

By the papers accompanying the case it appears that the Tebbets dam is at Allen's Falls, that the Mast Point dam is about four miles below the Tebbets dam and the two acres, and that the land claimed by the plaintiff to have been injured is above the two acres, further up the river ; so that the point of the case is this, Did the deed give to the company the right to flow above the two acres ?

The maxim that "whoever grants a thing is supposed also tacitly to grant that without which the grant itself would be of no effect," is among the most ancient principles known to the law. 11 Coke 62 ; Touchstone 89 ; Hobart 234 ; Broom's Maxims 362.

The maxim, however, is not without qualifications, as it must be understood as applying to such things only as are incident to the grant, and directly necessary for the enjoyment of the thing granted. Broom's Maxims 366.

It is also an established maxim that "the express mention of one thing implies the exclusion of another." Co. Litt. 210, a, 183, b. ; 5 Bing. N. C. 185 ; Broom's Maxims 505.

This maxim also admits of qualifications. Broom's Maxims 506.

It is a further rule, that such meaning is to be given to words and expressions as may carry into effect the intention of the parties. Co. Litt. 36, a; Broom's Maxims 413.

And in judging of the intention of the parties, the facts and circumstances accompanying the transaction and affecting the property, or their relation to it, are to be considered. *Grant* v. *Lathrop*, 23 N. H. (3 Fost.) 81; *Gray* v. *Clark*, 11 Vt. 583; *Drew* v. *Drew*, 28 N. H. (8 Fost.) 489; *Eastman* v. *Knight*, 35 N. H. (4 Fogg) 554; *Webster* v. *Atkinson*, 4 N. H. 23; *Webb* v. *Stone*, 24 N. H. (4 Fost.) 286; *Worster* v. *Butler*, 13 Conn. 309; *Doe* v. *Burt*, 1 Term Rep. 703.

In giving a construction to this deed, the two first maxims stated come in conflict. It is contended by the plaintiff, and for the purposes of this decision we take the fact to be, that the land "below" the Tebbets dam at Allen's Falls, cannot be flowed as high as the Mast Point dam will flow it at its present height, without also flowing the land above the Tebbets dam, and above the two acres. It would follow, therefore, from the first maxim, that the right so to flow above the Tebbets dam and the two acres would be impliedly granted; such right being necessarily incident to the full enjoyment of the grant to flow below. But by the second maxim, namely, that "the express mention of one thing implies the exclusion of another," as the grant is of the right to flow "below" the Tebbets dam, and is thus clearly expressed, an implied right to flow "above" that dam would not exist. The conveyance is of "the right of flowing my land *below* said falls by means of said company's dam, but not higher."

At the time that Chick gave to the defendants this deed, they executed to him the following agreement: "Whereas the Great Falls Manufacturing Company have received of Levi L. Chick his deed of this date, granting

them. two acres of land, more or less, situate at Allen's Falls, in Rochester, N. H., for which full compensation has been paid, and there is also embraced in said deed the right of flowing said Chick's land below said granted premises, so far as the same may be flowed by means of said company's dam at Mast Point, so called, at the present height of said dam, for which right of flowage no compensation has been paid ; now said company, in consideration thereof, do hereby agree with said Chick to pay him reasonable compensation for said right of flowage, in case his land below said granted premises is injured by means of said dam.''

From this contemporaneous writing it would seem plain that it was not the intention of Chick to grant, or of the defendants to purchase, any right of flowing by means of the Mast Point dam above Allen's Falls. If such was the intention, why did not the deed and this contract so express it ? Why · confine the flowage to the land *below* the falls, if it was the intention of the parties that the right to flow *above* should be granted ? Why provide for compensation for flowage *below*, and not for that *above*, if that above was purchased and sold ? It would have been quite as easy to have drawn the conveyance giving the full right above as well as below, if such was the contract. Strike out of the description in the deed the three words, "below said falls," and the full right is given. ; for it would then read, " the right of flowing my land by means of said company's dam at Mast Point, at the present height of the dam, but not higher." It is difficult to see why the right of flowing *below* the falls should be so expressly stated, if it was the intention to grant the right to flow *above* as well as below.

To extend the construction of the deed to include such a right appears to us would be inconsistent with the intention of the parties ; and the maxim, that the mention of

one thing implies the exclusion of another, must in this case take the precedence.

It is contended by the defendants that a mill privilege on the Rochester side of the river at Allen's Falls was granted by this deed, and that by such grant the right was conferred of erecting a dam of suitable height for a mill, and, as an incident thereto, the right to flow all the land above, so far as might be necessary for the mill; that this grant is given by the term " embraces," used in the deed.

But we do not understand that the deed in terms conveys a mill privilege at Allen's Falls. It conveys two acres of land by lines which are said to embrace all the mill privilege, &c., which may be true, without the deed conveying any specific right to a mill privilege. If there was any privilege there, it passed in the same way that buildings or trees upon land pass by a deed of the land. A conveyance of land by metes and bounds or lines passes the buildings thereon, whether they are specified in the deed or not; and it adds nothing to the force of the conveyance that it contains the expression " including all the buildings," or that it " embraces" all the buildings. Such terms are not words of grant, nor are they covenants that buildings are upon the land.

And it is thus that we construe this deed. All the mill privilege on the Rochester side of the falls passed, whatever that might be, and all rights of flowage then legally incident thereto; but there is nothing in the deed or in the case to show what that privilege was, or what rights of flowage, if any, belonged to it. Those remain to be shown.

This view is confirmed by the contemporaneous contract already referred to, in which the grant is described as " two acres of land," for which compensation has been made, without referring to any mill privilege. If here was a grant of a mill privilege—a covenant that such a

privilege existed there—which, it would seem, would be of much more value than the two acres—and such was the understanding of the parties, why was not the mill privilege specified in this contemporaneous writing as well as the two acres?

The positions relied on by the defendants, if the deed is to be construed as they contend, would seem to bind the grantor as conveying the absolute right to flow above the two acres, and would make him liable for damages on his covenants, if he had not the right to make such a grant. But such, we think, could not have been the intention of the parties.

Had there been an express grant of a mill privilege for a good consideration paid, such grant would have carried with it the right to raise a dam for the use of the privilege, and the grantor would have been bound to make good his covenants. But we do not so construe the deed.

Our conclusion, then, is, first, that the deed to the defendants gave them no right to flow above the two acres by means of the Mast Point dam; second, that whatever mill privilege there was within the two acres passed to them, and that whatever rights of flowage then existed by virtue of the privilege also passed. If there was a mill privilege there, which at that time had connected with it the right to flow above the two acres, that right passed; but if there was no such privilege, and no such right then existed, the deed created none.

Entertaining these views as to the effect of the deed to the defendants, it follows that the verdict must be set aside, and the cause stand for trial. What our conclusions might be upon a new and further state of facts cannot, of course, be anticipated.

*Verdict set aside.*